Our next case this morning is United States v. Hampton. Again, Mr. Patton. You may proceed. Thank you, Your Honor. When a defendant tells a police officer that's interviewing him, actually, I want to change that. I haven't had a chance to get a lawyer or anything. You say, I want to change what's happening. I haven't even had a chance to get a lawyer. The defendant has unequivocally stated that he wants a lawyer and questioning has to stop. And that's what's happened in this case. And I think the perversion of this case is the idea that the officer is saying, no, no, no, you can't waive your right to a lawyer yet because I haven't read your Miranda rights. And so I need to record this and I need to read these rights over to you and go over your options with you before you can waive your right to a lawyer. And that's exactly backwards of what the Supreme Court said in Edwards and specifically in Smith v. Illinois. And Smith's saying, look, if the person invokes, they invoke questioning has to stop. And you can't use the fact that because the police don't stop questioning and keep talking to the guy and then convince him to waive his right to a lawyer as evidence that he didn't invoke. It flips it, Miranda, exactly on its head. Mr. Hampton, there was nothing equivocal about what he said. And it was in the present tense, I haven't had a chance to get a lawyer. That's invoking. It is not the same as the Weisinger case that the government primarily relies on in their brief where the defendant said, do I need a lawyer before we start talking? That's not an invocation because it's somebody asking the question, do I need a lawyer? That's not what Mr. Hampton said. He said, I have not yet had a chance to get a lawyer. Now, what did they do when he said that? When they said that, they turned off the recording equipment. Then the testimony at the suppression hearing was that two of the officers went out in the hall, talked for a few minutes and went back in and talked with Mr. Hampton. Only one of the guys testified at the suppression hearing, Your Honor, so you're only getting that person's version. They said they went over Mr. Hampton's options with him, but there was no detailed description of what that entailed, what the options. You don't know if they gave him the cooperation speech of, well, hey, this is your chance, this is your chance to talk with us. If you get a lawyer, we can't talk with you. Maybe they just said, hey, you can hire a lawyer, you cannot hire a lawyer, but there's no reason for them to go over his options with him because he's already told them what he wants to do, and that is, I want to get a lawyer. So after he tells them, hey, I haven't had a chance to get a lawyer, I haven't even had a chance to get a lawyer or anything. I think any English speaker would listen to that and say the only reason you need a chance to get a lawyer is because you want a lawyer, but you just haven't had a chance to get one yet because he had just been arrested the night before. And since he had only been in jail overnight, he hadn't had a chance to contact a lawyer to make arrangements. But when he says, I haven't had a chance, haven't even had a chance to get a lawyer or anything, that is a present intention to retain counsel to get the assistance of counsel. And if you're going to say that's equivocal, then you really are getting to the point where there's some kind of magic word or magic phrase that a defendant has to use that requires the police to stop questioning. Otherwise, the police are always going to be able to say, well, it was equivocal, so I could keep talking to him and try and clarify what he meant. And of course, the police, they're not neutral. They're trying to get him to talk. And they know they can't talk with him if he invokes, so they have no incentive to clarify that he really does want a lawyer. All of their incentives are to get him to say, no, I don't want a lawyer. I'll keep talking to you without a lawyer. So that's why the Supreme Court said we don't let the police keep talking to someone after they say they want a lawyer. So they shouldn't have had this off-the-tape conversation? They shouldn't have had any more conversation with him. They just should have said, all right, Mr. Hampton, then we're done here, and they should have left. I mean, it's that simple. So after the, I guess, off-the-tape conversation, is that when they gave him the Miranda warning? They convinced him to let them turn the tape back on. Then they read him the Miranda warnings, telling him he's got to write the lawyer when he's already told them, hey, I haven't even had a chance to get a lawyer yet, and they got him to waive. And then it's an hour and a half, about an hour and a half, where he confesses. They ask him about a lot of local burglaries, or he was stealing from businesses, scrap metal and stuff like that. But then they work their way into the post office robbery, and he resists making any admissions on that for a long time. Armed robbery, I think, right? Yes, sir. Yes. What does the video show about what the officer said to him immediately before this statement? It's the officer saying, hey, my name is Officer Dusty Terrell. It's February, oddly, it's like almost February 26th. The time is da-da-da. We're videotaping. We have your permission to do that. And then Mr. Hampton says, actually, I want to change that. I haven't even had a chance to get a lawyer or anything. Does your argument depend upon the prefatory statement, actually I want to change that? In other words, the prior agreement to make a statement? I don't think so. I think at most it's, hey, I want to change the fact that we're recording. I mean, he certainly wants to say, I want to change what the status quo is right now. And we don't know exactly what any – because Terrell, the guy doing the questioning on the tape, claims Walker had agreed to the recording, but there's nothing on the recording where they say, hey, do we have your permission to record this? So I don't know if they had a conversation beforehand. Terrell didn't testify at the suppression hearing. And so we don't know if there was some other questioning about we're going to record it. It doesn't seem like it because when the video comes on, Terrell, he opens up his book, looks at his watch, which is kind of the standard thing. This is the date. This is the time. This is where we're located. We're talking to this person. We have your permission to record this, right? And that's when Mr. Hampton says, no, I want to change that. I haven't even had a chance to get a lawyer. And if that's not invoking your right to a lawyer, if that's not telling a reasonable, objective observer that I want the assistance of a lawyer in dealing with you, then you really are – the only way you can invoke it is if you say the words, I want to have a lawyer with me right now. Please stop questioning me. And I don't think that – I know that the Supreme Court has said that's not what the rule is. And so we would ask, based on that, that you reverse the district court, and I'd like to reserve the remainder of my time. That's fine. Mr. Baum, welcome back. Thank you. Jason Baum again on behalf of the United States Council. Judge Sykes, I think Judge Darrell, her conclusion was, yes, the context is critical to not just the words that were used, but the context. And the context was the officer saying, we're going – we have your permission, we're going to record this. And Mr. Hampton says, actually, I'd like to change that. I haven't had a chance to get a lawyer or anything. The officer immediately responds, yeah, that's right, and I want to talk to you about those rights. I just want to get that recorded where I go over your rights with you and how you respond to that. Mr. Hampton says, no, I don't want to do that. And it's shut off. And the shutting off, honestly, I think it does suggest that the officer is trying to respect the wishes of what Mr. Hampton wants to have happen. I don't think there's anything in the record to suggest that they're somehow overcoming what he wants to have happen. And that's borne out also by when the recordings turn back on, they make it crystal clear. If you want a lawyer, it's over. We stop questioning you right now. And he says, no, I will talk to you. And I do think context is critical. The inflection, this court has the same video, can watch it, but inflection and how things are said, what they're in response to, all of that matters to whether it's an unequivocal invocation of counsel. Given what happened here, we don't believe that there was an unequivocal invocation of counsel. So, yes, we think Judge Darrell got it right, that context matters. If there are no questions, the government will respond. We don't know what went on in the conversation when they turned the recorder off. We have the testimony of what they said happened. And what they said happened was they talked to him about why they wanted to talk to him, that he had the right to a lawyer. We have the testimony. We don't have a recording of it. It wasn't like he was spouting off about other things. There was no, I don't believe there was any interrogation about the facts. It was all regarding why they wanted the recording, why they wanted to talk to him, and what his rights were. They gave him Miranda when he was arrested. I believe they gave him Miranda when the recording was off, and they gave him Miranda once the recording was turned back on. Well, obviously his statement, having had a chance to get a lawyer, was an alert. Yes, and the officers talked about that amongst each other. Do we think this is an equivocal or an unequivocal? And went over and clarified it, exactly what the Supreme Court said officers ought to do, and they did it on the recording. And now there's no question about how they clarified it with him. Thank you. All right, thank you. Mr. Patton, anything further? The idea that you have to explain to a person their right to a lawyer, you can't accept their statement that I haven't had a chance to get a lawyer yet, isn't an unequivocal invocation of the right to counsel, because I, as a police officer, haven't told you yet that you have the right to a lawyer, is ridiculous. When somebody invokes, it's over, and you don't get to keep talking to them, even to give them, read them the Miranda warnings. Because the Supreme Court says when you invoke, it's if, they have to stop. And if you let them do that in this case, then these same officers are going to do the exact same thing. Anybody, well, we didn't think it was unequivocal. We thought it was equivocal. We talked about it amongst ourselves, and surprisingly, we decided that it wasn't an unequivocal request for a lawyer. I mean, what do you think they're going to conclude amongst themselves? So we would ask you, yeah, read it in context. In context, when somebody's being interviewed in a custodial interrogation by the police, and they say, hey, I haven't had a chance to talk to a lawyer yet, that is telling the police that person wants the assistance of counsel in dealing with the police. Their questioning should have stopped at that point, and this statement should have been suppressed. At that point, would it be appropriate for them to say, then read them the Miranda rights right there? Would that be too late? I think it would be improper because, number one, you don't have to inform somebody. If they've invoked their right to a counsel, you don't need to explain to them the right that they have counsel. And the whole idea, and the Supreme Court said this in Smith, and they said, look, whether it's intentional or unintentional, overt or subtle, the idea is we're not going to let the police keep the person talking in the hopes that we can bring them around to waiving their rights because that's what happens. I mean, that's what the police are trying to accomplish. That doesn't make them bad police officers, but they're trying to get the guy to talk. And so you can't use the cover of trying to explain the rights to them more fully to get around the fact that they've already invoked. So Miranda prohibits giving Miranda rights? If the person's invoked, absolutely. If the person has already said, I want a lawyer, no, the police are not allowed to then continue to give them the Miranda rights because once they invoke their right to counsel, all questioning has to stop. Has the Supreme Court said that? Yes, they said it in Miranda. They said it in Edwards. They said it in Smith. No, no, no, no, no. Has it said that you can't even give them their Miranda rights? They have not said it in those words, but what they've said is as soon as the person invokes, you have to stop. It's not you have to stop except that you can continue and give them these warnings that we've set out. It says if they invoke, you've got to stop. Thank you. Thank you. Our thanks to both counsel. Thank you both for the marathon day you've both put in.